\***NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| USMAN M. BAIG | |
| Plaintiff, | |
| vs. | Civil Action No. 10-0842 (FLW) |
| NUCLEAR REGULATORY COMMISSION | **OPINION** |
| Defendant. | |

**WOLFSON, United States District Judge:**

Plaintiff Usman M. Baig ("Plaintiff"), a former mechanical engineer for Defendant Nuclear Regulatory Commission ("Defendant" or the "NRC"), alleges that during the course of his employment, Defendant discriminated against him based on his age and Indian background. In the instant matter, among various bases, Defendant moves for summary judgment on the ground that Plaintiff is precluded by contract from bringing his discrimination claims to this Court because the parties have previously agreed to amicably resolve these types of claims arising out of his employment at the NRC.[1] Having reviewed the record, the Court is satisfied that Plaintiff has settled his discrimination claims with Defendant out-of-court, and holds that Plaintiff is barred from bring them here. Defendant's motion is, therefore, **GRANTED**.

---

[1] Defendant also argues that Plaintiff has failed to show a prima facie case of age and ethnicity discrimination. Because the Court finds that the parties' Settlement Agreement is binding upon Plaintiff, the Court will not address the merits of Plaintiff's discrimination claims.

1

**BACKGROUND**

On this Summary Judgment Motion, the Court only recounts undisputed facts, unless noted otherwise, relevant to the issue of the parties' Settlement Agreement. Plaintiff was born in India on July 18, 1944, and came to the United States to pursue his Master's Degree in Engineering in September 1972. See Plaintiff's Dep., T7-8. After working for the United States Navy for approximately twenty years, Plaintiff began working with the NRC on March 25, 2007, as a mechanical engineer within the Engineering Branch of the License Renewal Division. Id., T25:4-6. On July 7, 2008, Plaintiff filed a complaint with the Office of Small Business and Civil Rights ("SBCR") at the NRC, alleging discrimination and harassment resulting in a hostile work environment. See NRC Complaint dated July 7, 2008. According to Plaintiff, his branch chief, Mr. Chang, referred to him as an "old man," and excluded him from "inner circle" conversations with peer Chinese engineers who often spoke to Mr. Chang in Chinese. Id., T59:12-19. In addition, Plaintiff claimed that Mr. Chang excluded him from meaningful and high profile assignments, which assignments Plaintiff believed were given to favored employees by Mr. Chang. See Id., T57:21 - 58:11. Plaintiff also asserts, in a conlusory fashion, that another supervisor, James Medoff, discriminated against him. Id., T49:11-52:19.

On July 21, 2008, Plaintiff was issued a Notice of Proposed Removal. See NPR dated July 21, 2008. According to Defendant, Plaintiff was recommended by the NRC to be terminated because of his poor performance, which was documented in a Performance Improvement Requirements Memorandum (the "PIRM"). See PIRM dated April 16, 2008; Plaintiff's Dep., T80:1-81:21. Thereafter, Plaintiff sought union representation, and local union president, Dale Yielding, was assigned as his union representative. Mr. Yielding submitted a written reply to the Notice of

2

Proposed Removal. See Plaintiff's Dep., T87:24-88-14. On or about August 12, 2008, an oral reply to the NPR was conducted, wherein Mr. Yielding presented Plaintiff's defense. Id. T88:15 - 90:13. However, unswayed by Plaintiff's efforts to oppose the proposed removal, the NRC decided to remove Plaintiff from federal service on September 15, 2008. Id., T90:14-91:13; see Decision To Remove from Federal Service Memo dated September 15, 2008, p. 1.

After Plaintiff was terminated, Mr. Yielding engaged in settlement discussions with the NRC regarding Plaintiff's discrimination complaint. See Yielding Email dated September 24, 2008. According to Plaintiff, he took part in the input of terms of the eventual Settlement Agreement between him and the NRC. Plaintiff's Dep.,T113:14-20. On October 2, 2008, Plaintiff signed the Settlement Agreement. See Settlement Agreement dated October 2, 2008. Notably, pursuant to the Agreement, the NRC agreed to replace the word "removal" with the term "retirement" as the reason for the termination of Plaintiff's employment. In exchange, according to the Agreement, Plaintiff agreed to waive and withdraw his discrimination claims, including those filed with the SBCR on July 7, 2008, and generally release the NRC from all claims. See Settlement Agreement dated October 2, 2008 at ¶¶ 5, 12.

By letter to the NRC dated January 10, 2009, Plaintiff claimed that the NRC was in breach of the Agreement, alleging that the NRC failed to properly calculate his retirement payments, and that the Agreement should be voided because Plaintiff was coerced by the NRC officials when he signed the Agreement. On February 11, 2009, the NRC concluded, however, that it had complied with the Agreement. Subsequently, Plaintiff filed an appeal with the Equal Employment Opportunity Commission ("EEOC"). See Notice of EEOC Appeal dated March 20, 2009. Upon review of the materials, the EEOC held that because nothing in the terms of the Agreement required the NRC to

provide Plaintiff with retirement benefits or addressed when they were to be paid or how they were to be calculated, the NRC did not have any obligations as to the retirement benefits, and thus did not breach the Agreement. As to the alleged coercion, the EEOC found that such an allegation could not be established because Plaintiff had already been removed from his employment at the time of the negotiation and execution of the Agreement. Thereafter, Plaintiff timely requested reconsideration of the decision, but the EEOC denied the request.

On or about February 15, 2010, Plaintiff filed the instant complaint in this Court asserting various causes of actions. By Opinion and Order dated June 6, 2011, this Court dismissed all of Plaintiff's claims with prejudice, except for his discrimination claims based upon national origin and age. Defendant now moves for summary judgment on those remaining discrimination claims.

## DISCUSSION

**I.    Standard of Review**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determination or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all

justifiable inference are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under Anderson, Plaintiff's proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quotations omitted); see also Matsushita, 475 U.S. at 586; Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the providence of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358 (3d Cir. 1992).

**II.     Settlement Agreement**

Defendant argues that summary judgment is proper based on the fact that Plaintiff has waived any claims relating to age or national origin discrimination by entering into the Settlement

Agreement with the NRC. In response, while Plaintiff concedes that he physically signed the Agreement, he claims that he had not seen or read the Agreement at the time of signing. Rather, Plaintiff maintains that when he signed the last page of the Agreement, it was his understanding that he would be reinstated and not retired from his position. According to Plaintiff, he realized that there was no clause regarding his reinstatement when he received a copy of the entire Agreement some time in December 2008. Moreover, Plaintiff also posits that his signature was procured by coercion and fraud on the part of the NRC. Unfortunately for Plaintiff, however, the Court finds that the Agreement is binding and it precludes him from bringing his already-settled discrimination claims here.

Generally, a settlement agreement is considered a contract, and thus governed by basic principles of state contract law. See, e.g., Mortellite v. Novartis Crop Protection, Inc., 460 F.3d 483 (3d Cir. 2006); In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000); Saber v. Finance America Credit Corp., 843 F.2d 697 (3d Cir. 1988). It is well settled that "a party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assert to its terms and legal effect." Rudbart v. North Jersey District Water Supply Comm., 127 N.J. 344, 353 (1992). Indeed, "signing a contract creates a 'conclusive presumption that the signer read, understood, and assented to its terms.'" Raiczyk v. Ocean County Veterinary Hospital, 377 F.3d 266, 270 (3d Cir. 2004). Hence, failure to read a contract is not a defense to being bound by the terms, and in that connection, even illiterate persons have been held to be bound by a signed contract. See Modern Security v. Lockett, 143 A. 511 (N.J. 1928); Riverside Chiropractic Group v. Mercury Insurance Co., 404 N.J. Super. 228, 238 (App. Div. 2008). In similar vein, in cases of unilateral mistake, rescission or reformation of a contract is not an available remedy

6

to a party where the mistake is the result of that party's own negligence.  Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc., 913 F.Supp. 837, 843 (D.N.J. 1995).

In particular, claims for discrimination may be waived by a settlement agreement during the EEO process.  See Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1974)(an employee can waive rights under Title VII as part of a settlement agreement); see also Hubbell v. World Kitchen, LLC, 688 F.Supp. 2d 401, 417 (W.D. Pa. Feb. 24, 2010); Schmidt v. Shah, 696 F.Supp. 2d 44, 62 (D.D.C. Mar. 17, 2010).  Indeed, EEO settlements are afforded the same treatment as voluntary litigation settlements.  Spiridigliozzi v. Bethlehem Mines Corp., 558 F. Supp. 734, 736 (W.D. Pa. 1980).  Of course, a person who agrees to settle a claim during the EEO process cannot subsequently seek the benefit of the settlement as well as the original claim that the person agreed to settle.  Kirby v. Dole, 736 F.2d 661, 664 (11th Cir. 1984).

Here, the Court first focuses on whether the discrimination claims raised by Plaintiff in this case fall within the ambit of the Settlement Agreement.  The Court's initial consideration is whether the Settlement Agreement complies with the requirements under the Age Discrimination in Employment Act (the "ADEA").  Under the ADEA, for a wavier of an age discrimination claim to be knowing and voluntary in a settlement of an EEOC charge, the following criteria must be met: (a) the waiver is written in a manner calculated to be understood by the employee or the average individual eligible to participate; (b) the waiver specifically refers to the rights or claims arising under the Protection Act; (c) the individual does not waive rights or claims subsequent to the date of execution of the waiver; (d) the individual waives his or her rights or claims in exchange for consideration above which the individual is already entitled; (e) the individual is advised in writing

7

of the right to consult an attorney prior to signing the waiver; and (f) the individual is provided a reasonable time within which to consider the settlement agreement.  See 29 U.S.C. § 626(f)(2).

In the present case, while Plaintiff argues that he was coerced and defrauded into signing the Settlement Agreement by the NRC, Plaintiff does not raise any argument that the Settlement Agreement fails to meet the above-referenced criteria.  As to the first and second factors, there is no dispute that Plaintiff understood, or has the capacity to understand, the terms of the Settlement Agreement, and that the waiver specifically dealt with his age and national origin discrimination claims.  As to the claims raised by Plaintiff in this case, those arose prior to the execution date of the Agreement.  And, indeed, in exchange for being designated as "removed" by the NRC, Plaintiff received a "retirement" designation.  This designation clearly is a consideration above to which Plaintiff was entitled.  Finally, when Plaintiff signed the Agreement, he acknowledged that "he has carefully read and fully understands all of the provisions of this Agreement and that he has had a reasonable time to consider its terms; that he has been advised to consult with an attorney of his own choosing before signing this Agreement; that he waives all of his claims against the [NRC], its agents and all other claims arising up to and including the date of this Agreement."  See Settlement Agreement dated October 2, 2008, ¶ 13.  Further, Plaintiff understood that he was waiving "rights or claims only in exchange for consideration in addition to anything of value which he already is entitled, and, that he does not waive rights or claims that may rise after the date of this Agreement is executed."  Id.  Accordingly, the Court finds that the Settlement Agreement meets the requirements set forth by the ADEA as to Plaintiff's waiver of his age discrimination claim.

8

Moreover, the Court finds that the Settlement Agreement, in two separate paragraphs, unambiguously set forth the waiver of Plaintiff's national origin and age discrimination claims. Paragraph 5 of the Agreement provides:

> 5. By execution of this Agreement, Employee and the Union voluntarily waive and withdraw with prejudice any and all right to file, pursue, or litigate in any forum, including but not limited to, the Equal Employment Opportunity Commission, the negotiated grievance process, arbitration, the Federal Labor Relations Authority and the Merit Systems Protection Board, any claims, complaints, appeals and wards which relate to or arise form any issue, matter or dispute raised by or in connection with Employee's employment, including Employee's EEO complaint, NRC-08-09, and all EEO claims.

Settlement Agreement dated October 2, 2008, ¶ 5.  Paragraph 12 reinforces the wavier of Plaintiff's discrimination claims:

> 12. In consideration of the promises made herein, the parties agree that this Agreement completely resolves all issues an each party releases the other, including for the Agency, its employees in their individual and official capacities, from any liability, claims, grievances, attorney fees and remedies of any type, whether known or unknown, which the parties now have or may have by reason of any matter, cause, act or omission arising out of or in connection with the Employee's employment with the Agency, including the Employee's claims of national origin and age discrimination, arising on or prior to the execution of this Agreement.  This release includes, but is not limited to, demands, actions, rights and claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and any other federal or state statute, regulation, rule or policy, any claim for administrative, judicial relief, or claim for damages, back pay, interest, and attorney fees arising out of or in connection with the Employee's employment with the Agency prior to the execution of this Agreement.

Id., ¶ 12.   Clearly, the language of both provisions encompass Plaintiff's waiver of his discrimination claims – namely, age and national origin discrimination – and based upon the waiver, Plaintiff is precluded from bringing his claims.

Notwithstanding the parties' Settlement Agreement, however, Plaintiff insists that when he signed the Agreement, he believed that the Agreement would reinstate Plaintiff to his position.

9

Alternatively, and somewhat contradictory in nature, Plaintiff argues that there was never an agreement. The only evidence to support either of Plaintiff's positions is his own self-serving statements that he proffered during his deposition and unsworn statements in his opposition brief to Defendant's motion; those statements are not sufficient to defeat summary judgment.

To reiterate, Plaintiff, who is opposing summary judgment, "must support each essential element of the opposition with concrete evidence in the record." Ullrich v. United States Secretary of Veterans Affairs, 457 Fed. Appx. 132, 136 (3d Cir. 2012) (citations omitted). Worded differently, in order to create a genuine issue of material fact, Plaintiff must provide sufficient evidence to permit a factfinder to find in his favor at trial. See In re CitxCorp., Inc., 448 F.3d 672, 677 (3d Cir. 2006). In that regard, it is wholly insufficient for Plaintiff to point to his pleadings or allegations as actual evidence. EL v. Southeastern Pennsylvania Transportation Auth., 479 F.3d 232, 238 (3d Cir. 2007). Nor can Plaintiff defeat summary judgment by offering his own self-serving statements as proof. See Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

As indicated earlier, New Jersey law creates a presumption that once Plaintiff signs a document, he is presumed to have read and understood the Settlement Agreement, and more importantly, Plaintiff is presumed to have agreed to the terms of the Agreement. He cannot now, without any evidence, rebut such a presumption by simply stating that he did not understand the terms of the Settlement Agreement at the time he signed it, or that he understood the Agreement to reflect something other than what has been provided by its clear language. The Settlement Agreement unambiguously states that "[u]pon execution of this Agreement by all parties, the Agency shall remove from Employee's OPF the previously issued Standard Form (SF) 50 (reflecting "Removal" as the reason for the termination of Employee's employment), and replace it with an SF-

50 that states "Retirement" as the reason for separating from the agency and indicate "voluntary" retirement in all appropriate fields or codes on the form." Settlement Agreement dated October 2, 2008, ¶ 2. In addition, the Agreement provides that "[i]n consideration for the Agency's promise above, the Employee voluntarily and irrevocably retires and separates from the Agency and the Federal Service retroactive to September 15, 2008." Id., ¶ 4. Plaintiff is presumed to have read and understood those provisions. Even if Plaintiff neglected to read the Agreement, he bears the consequences for having failed to do so. Riverside, 404 N.J. Super. at 238; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 386 (1960).

Even more compelling, Plaintiff's own actions after the execution of the Settlement Agreement belie his positions on this motion. On the same day that the parties signed the Settlement Agreement, Plaintiff requested retirement from the NRC, which action is consistent with the terms of the Agreement. See Plaintiff's Dep., T137:19-141:17. In addition, in December 2008, Plaintiff sent an e-mail to his union representative, Mr. Yielding, in which he implicitly acknowledged that the Settlement Agreement existed. Specifically, in that e-mail, Plaintiff wrote that the NRC had "defaulted" on the agreement. See Email dated December 29, 2008. In that regard, Plaintiff contended that his "retirement" should have started in October 2008, and he alleged that the NRC had failed to correctly calculate his retirement payments. Id. Clearly, based upon Plaintiff's own writings, he was certainly aware of the terms of the Settlement Agreement, and significantly, his retirement status. Indeed, the primary basis for Plaintiff's subsequent appeal to the EEOC, in January 2009, was his allegation that the NRC breached the Settlement Agreement. Finally, Plaintiff's arguments that the NRC coerced or somehow defrauded Plaintiff into signing the Settlement Agreement are not supported by any evidence in the record. Other than his unsupported

assertions, Plaintiff has adduced nothing more than his mere displeasure with the NRC. To establish a defense of coercion or fraud, Plaintiff must "point to actual evidence in the record." El, 479 F.3d at 238. Because Plaintiff has failed to do so, his defenses are without merit.

## CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED** and Plaintiff's Amended Complaint is dismissed in its entirety.

An appropriate Order shall follow.

          /s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: April 10, 2013